IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM RUMBAS AND DOROTHY RUMBAS H/W, | |
| Plaintiffs, | Civil Action No. 06-1699 (JBS) |
| v. | |
| BOROUGH OF LAWNSIDE, et al., | **OPINION** |
| Defendants. | |

**APPEARANCES:**

Alan E. Denenberg, Esq.
Abramson & Denenberg, P.C.
1200 Walnut Street, 6th Floor
Philadelphia, PA. 19107
    Attorney for Plaintiff

Matthew B. Wieliczko, Esq.
Zeller & Wieliczko, LLP
Ten Melrose Ave., Suite 400
Cherry Hill, NJ 08003
    Attorney for Defendant Borough of Lawnside

David M. Ragonese, Esq.
White and Williams LLP
LibertyView
457 Haddonfield Road, Suite 400
Cherry Hill, NJ 08002-2220
    Attorney for Defendants Police Director George Pugh,
    Patrolman William Roberts, and Patrolman Daniel Battista

**Simandle, District Judge:**

I.   <u>**INTRODUCTION**</u>

    In this suit, Plaintiff William Rumbas ("Plaintiff") claims

that his rights under the Fourth Amendment of the United States

Constitution and under the New Jersey State Constitution were

violated when he was arrested without probable cause and with the use of excessive force on June 11, 2004.  Plaintiff demands punitive and compensatory damages.[1]

   This matter comes before the Court on two motions for summary judgment, pursuant to Fed. R. Civ. P. 56 - one by Defendants Borough of Lawnside [Docket Item 25] and one by Defendants Police Director George Pugh,[2] Patrolman William Roberts, and Patrolman Daniel Battista [Docket Item 24].  The principal issues are whether Defendants had probable cause to arrest Plaintiff and whether a reasonable jury could find bystander liability in this case.  For the reasons explained below, the Court shall grant the motions in part and deny them in part.

## II.  BACKGROUND

   This case is before this Court on summary judgment and thus the facts set out below are the facts as viewed in the light most favorable to the non-moving party.  This case arises out of the arrest of Plaintiff by a law enforcement officer, allegedly without probable cause and with the use of excessive force on June 11, 2004.  Plaintiff owns and operates Barrington

_____

   [1]  Plaintiffs also seek interest, costs, attorney's fees and other appropriate relief.  Plaintiff's wife, Dorothy Rumbas, also asserted a loss of consortium claim.

   [2]  Plaintiff spells Defendant Pugh's name "Pew" while Defendants spell it "Pugh"; for the adjudication of this motion the Court will adopt "Pugh".

2

Transmission at 298 White Horse Pike in Barrington, New Jersey. (Rumbas Dep. at 13-14., Pl.'s Opp'n Ex. A.)  Several days prior to Plaintiff's arrest, Michelle Junis brought her Hyundai motor vehicle to Plaintiff's establishment for repairs.  (Id. at 26-27.)  On the day of the car's arrival, or sometime thereafter, Plaintiff took the car for a road test in an attempt to ascertain what was wrong with the vehicle.  (Id. at 26.)  During the road test the vehicle malfunctioned in front of an Amoco station and Plaintiff was unable to get the car to move any further.  (Id.) Plaintiff was familiar with the Amoco workers from frequent gas purchases and received their help in pushing the car into the Amoco lot. (Id. at 26-27.)  Plaintiff received permission to leave the vehicle on the Amoco lot for a few days from someone he believed to be either the owner or the manager.[3]  (Id. at 28.)

Defendant, Patrolman Roberts, first observed the vehicle one day prior to the incident on June 10, 2004.  (Roberts Dep. at 37,

---

[3]  Plaintiff stated in his deposition testimony that:

> A.   The man at the gas station, I don't know if he's the owner or the manager, but he's there all the time.  When we pushed it over on the side, I remember it being late in the day and he said, don't worry about it.  When you get around to it, come get it.  I understand. It's not in my way.  It's on my lot.  And I said, I will get the tow guy to come get it. It was close to the weekend.  I don't know if you can get it during the weekend, and he said, okay.

Pl.'s Opp'n Ex. B.)[4]  Because the vehicle had a broken window,
Defendant Roberts "ran the tags" to investigate and determine
whether the car was stolen or "wanted for anything else" (Roberts
Dep. at 38, Pl.'s Opp'n Ex. B.).  However, Defendant Roberts
found that the car was not stolen and that everything with regard
to the car was in order and so he "figured it was broken down and
[he] figured [he] would let it sit." (Id.)  The following day,
Defendant Roberts observed that the vehicle was still parked in
the Amoco lot and again investigated. (Id. at 39.)  As before,
Defendant Roberts was informed that everything was in order.
(Id.)  Subsequently, Defendant Roberts contacted the vehicle's
owner, Ms. Junis, to further inquire why the vehicle was there
or, if she didn't know, to inform her of the vehicle's
whereabouts and that it had a broken window. (Id. at 39-40.)
Junis told Defendant Roberts that the vehicle had been dropped
off at Plaintiff's establishment for repairs. (Id. at 40-41.)
Thereafter, Defendant Roberts asked the station attendant if he

---

    [4] Patrolman Roberts' deposition testimony stated in
pertinent part:

> Q: So tell me what you recall doing on – was
> this on June 10th?  A: I believe the first
> time I saw this vehicle, no, it was not on –
> June 10th?  Q: June 11th is the date of the
> incident.  A.  Yeah, I believe on my report it
> says June 10th is when I first noticed the
> vehicle, I believe.

(Roberts Dep. at 37.)

knew anything about the vehicle and according to Roberts, "he didn't make any indication that he knew anything about it."  (Id. at 42.)

Defendant Roberts did not seek out or inquire further about the vehicle with the Amoco's manager or owner.  (Id.) Subsequently, Defendant Roberts had the vehicle towed, and decided to issue Plaintiff's business a summons for abandoning a vehicle in violation of N.J. Stat. Ann. § 4-56.5(a).  (Id. at 46.)[5]  Defendant Roberts, a patrolman for the Borough of Lawnside, radioed Barrington Police to meet him at Plaintiff's transmission shop, which is located in Barrington (Rumbas Dep. at 14), and proceeded there to issue the summons (Roberts Dep. at 47).  Arriving at Plaintiff's place of business prior to the Barrington Police, Defendant Roberts entered the shop and found Plaintiff inside the waiting area with several other people. (Id. at 50.)  Thereafter, in a rough tone of voice, Defendant

_____

[5]  N.J. Stat. Ann. § 39:4-56.5(a) provides in pertinent part:

> a.  It shall be unlawful for any person to abandon a motor vehicle on or along any highway, other than a limited access highway, or other public property or on any private property without the consent of the owner or other person in charge of the private property.  A vehicle which has remained on or along any highway or other public property or on private property without such consent for a period of more than 48 hours or for any period without current license plates shall be presumed to be an abandoned motor vehicle.

Roberts "'pointed his finger in [the Plaintiff's] face and he said, let me see your driver's license.'" (Rumbas Dep. at 35-36.) "Around that time" but before the arrest, Defendant Patrolman Battista, also a police officer for the Borough of Lawnside at the time of the incident, arrived and entered the waiting area. (Id. at 38.)  Plaintiff informed Defendant Roberts that he was the owner of the establishment and provided his name, and then questioned Defendant Roberts as to why he needed to see his license.  (Id. at 36.)  Defendant Roberts responded to Plaintiff's questioning by screaming "I'm a patrolman.  I want to see your driver's license."  (Id. at 36.)  During the course of the exchange, Defendant Roberts and Plaintiff continued to argue and Defendant Roberts did not explain why he needed Plaintiff's license. (Id.)  Defendant Roberts became hostile and continued to scream (id. at 36), while Plaintiff "did not raise his voice or use profanity towards Patrolman Roberts, nor was he otherwise disrespectful towards him." (Battista Dep. at 45,55, Pl.'s Opp'n Ex. C.)  After a subsequent request for his license, Plaintiff again did not produce it and again questioned Defendant Roberts as to why he needed it.  (Rumbas Dep. at 38.)  In response, Defendant Roberts:

> [R]eacted by grabbing [Plaintiff's] left
> hand, giving [Plaintiff] a hard twist around
> and pulling his handcuffs out at the same
> time.
>     And then he took his handcuffs from like
> over his head for some reason, he reached his

> arm way up over his head and took
> [Plaintiff's] wrist and slammed the handcuff
> onto [Plaintiff's] wrist then grabbed
> [Plaintiff's] other hand, spun [Plaintiff]
> again, grabbed [Plaintiff's] other hand and
> pushed [Plaintiff] up against the counter and
> put the other handcuff on.

(Id.)

The Plaintiff testified that Defendant Roberts never informed him that a failure to produce his license would result in arrest.  (Id. at 39.)  Witnesses testified that Defendant Roberts arrested Plaintiff in a violent manner and "then started using his leg roughly on Bill to get him to move."  (Witness Statement of Joseph Tiernan, Pl.'s Opp'n Ex. D.)  Witnesses also attest that during the argument and subsequent arrest Defendant Battista "was saying to Roberts that he was not handling the matter the right way."  (Witness Statement of Dennis Kelly, id.)  Defendant Battista was the senior officer on duty at the time of the incident and admits that he would have a duty to intervene and stop patrolman Roberts from making an illegal arrest or from using excessive force.  (Battista Dep. at 39-40.)[6]

Plaintiff was then placed in a police car and brought to a holding cell at the Lawnside Police station.  (Rumbas Dep. at 44-45.)  Plaintiff did not learn why Defendant Roberts had come to

---

[6]  Defendant Battista's deposition testimony stated in pertinent part: "Q. Okay. Would you agree with me that if you saw Officer Roberts conduct what you perceived to be an unlawful arrest, as the senior officer you would have an obligation to stop that arrest?  A. Yes."

his place of business until reaching the police station.  (Id. at 40.) Plaintiff then tried to explain to Defendant Roberts why the car was at the Amoco lot but Defendant Roberts "wasn't interested" and screamed and used profanity towards the Plaintiff.  (Id. at 41.)  Plaintiff was in the holding cell approximately fifteen to twenty minutes and complained to Defendant Roberts that his wrists were sore as a result of his forceful arrest.  (Battista Dep. at 59.)  Plaintiff was issued a citation for Abandoning a Vehicle and charged with Obstructing Administration of Law or other Governmental Function for failing to produce his license.[7]

Following the processing of Plaintiff's citations, he was

---

[7] New Jersey defines Obstruction of Administration of Law or other Governmental Function as:

> a.  A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

N.J. Stat. Ann. § 2C:29-1(a).  Plaintiff's citations for vehicle abandonment and obstruction were both dismissed.  Plaintiff stipulated to the existence of probable cause for the vehicle abandonment citation at his hearing.  (See Procedural History, infra; Def.'s Mot for Partial Summ. J. Ex. A.)

brought back to his business, but complained to Defendant Roberts about the pain in his wrists, and at this time Defendant Roberts also noticed that the Plaintiff was bleeding.  (Rumbas Dep. at 46-47.)  Defendant Roberts offered to take Plaintiff to the hospital, but Plaintiff declined, wishing to seek his own doctor. (Id. at 48.)

Plaintiff claims that as a result of the use of alleged excessive force during his arrest he has suffered "significant injury to his wrist and back."  (Pl.'s Opp'n at 9.)

## II.  <u>PROCEDURAL HISTORY</u>

On April 11, 2006, Plaintiff filed this lawsuit against Borough of Lawnside, Police Director George Pugh, Patrolman William Roberts, and Patrolman Daniel Battista, claiming that these Defendants violated Plaintiff's constitutional rights through the use of excessive force, unreasonable seizure, and unlawful arrest.[8]  Dorothy Rumbas claims a loss of consortium

---

[8]  Specifically, Plaintiffs' Complaint alleges that defendant Roberts unlawfully arrested him and used excessive force upon him, in violation of his rights under the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, the Constitution of New Jersey, and "the Laws of the United States and of the State of New Jersey" (Count I); that Defendant Roberts assaulted and battered him (Count II); that Defendant Battista is liable under § 1983 for the constitutional violations of Defendant Roberts (Count III); that the Defendant Borough of Lawnside and Defendant Police Director George Pugh are liable for the officers' constitutional violations under § 1983 (Count IV); that Defendants Roberts and Battista falsely arrested and falsely imprisoned Plaintiff (Count V); and that these violations have caused Plaintiff's wife, Dorothy Rumbas, a loss of consortium (Count VI).

against all Defendants as a result of the incident.  On January 7, 2008, Defendant Borough of Lawnside filed a motion for summary judgment.  Defendants Pugh, Roberts, and Battista also filed a motion for partial summary judgment on January 7, 2008.

Prior to this litigation, the citations that Plaintiff was issued for the incident in question were dismissed.  Importantly, on September 16, 2004, Plaintiff's citation for vehicle abandonment was dismissed in exchange for Plaintiff's stipulation to probable cause as to that citation.  (See Municipal Ct. Tr., Def.'s Mot. for Summ. J. Ex. A.)

## III.   SUMMARY JUDGMENT STANDARD OF REVIEW

Defendants moved for partial summary judgment as to Counts III, IV, V, and VI pursuant to Rule 56, Fed. R. Civ. P.  A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id.  Disputes over irrelevant or unnecessary facts will not

preclude a grant of summary judgment.  Id.[9]

On Defendants' motions for summary judgment, the Court must view the evidence in the light most favorable to Plaintiffs.  Yet the non-moving party must come forward with some admissible evidence: "Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial.'"  United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)).

## IV.  MOTION FOR SUMMARY JUDGMENT BY DEFENDANT BOROUGH OF LAWNSIDE

Defendant, Borough of Lawnside moves for summary judgment with regard to Count IV of the complaint, Plaintiff's claim for municipal liability under 42 U.S.C. § 1983, and Count VI of the complaint, Plaintiff Dorothy Rumbas' claim for a loss of consortium.  Plaintiffs do not oppose Defendant Borough of

---

[9]  Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061-62 (3d Cir. 1991).

Lawnside's motion, and consequently, pursuant to Fed. R. Civ. P. 56(e), Defendant Borough of Lawnside's motion will be granted on Counts IV and VI, and the complaint against Defendant Borough of Lawnside is dismissed.

**V.  MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT POLICE DIRECTOR GEORGE PUGH, PATROLMAN WILLIAM ROBERTS AND PATROLMAN DANIEL BATTISTA**

### A. Claims Against Defendant Police Director Pugh

Defendant, Police Director Pugh moves for summary judgment with regard to Count IV of the complaint, Plaintiff's claim for municipal liability under 42. U.S.C. § 1983, and Count VI of the complaint, Plaintiff Dorothy Rumbas' claim for a loss of consortium.  Defendant argues that these claims must be dismissed because holding Defendant Pugh liable for the acts of his co-defendants would be based on an impermissible theory of respondeat superior.  Plaintiffs do not oppose Defendant Pugh's motion, consequently, his motion will be granted on Counts IV and VI, and the complaint against Defendant Pugh is dismissed.

### B. Plaintiff's Claims of False Arrest and False Imprisonment

In Count V of the Complaint, Plaintiff alleges violations of the Fourth and Fourteenth Amendments to the Constitution. (Compl. ¶ 29.)  When courts adjudicate claims brought via 42 U.S.C. § 1983 for violations of an amendment that provides protection against a particular kind of government action, courts must evaluate the § 1983 claim based on that specific amendment,

not the general rights granted by the Fourteenth Amendment.
County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (citing
Albright v. Oliver, 510 U.S. 266, 273 (1994)).  Therefore,
Plaintiff's claims of false arrest and false imprisonment are
evaluated under the Fourth Amendment rather than the Fourteenth
Amendment.

     Defendants' only argument with regard to Plaintiff's claims
for false arrest and false imprisonment is that because the
claims require the absence of probable cause, and Plaintiff
stipulated to the existence of probable cause in municipal court,
that Plaintiff can not now bring claims for false arrest and
imprisonment.  However, Plaintiff asserts that the stipulation of
probable cause was only with regard to Plaintiff's motor vehicle
abandonment citation, an offense which does not authorize arrest,
and therefore, Plaintiff did not stipulate to probable cause for
arrest.  Upon review of the record, the Court finds that
Defendants' argument fails because the evidence shows Plaintiff
only stipulated to probable cause for a non-arrestable offense.

     It is well established that an arrest without probable
cause is a constitutional violation actionable under 42 U.S.C. §
1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)
(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274
(1994) (a section 1983 claim for false arrest may be based upon
an individual's Fourth Amendment right to be free from

13

unreasonable seizures).  To state a claim for false arrest, a
plaintiff must allege two elements: (1) that there was an arrest;
and (2) that the arrest was made without probable cause.  <u>Dowling
v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).[10]
Thus a defense to an unlawful arrest claim is that the police
officer Defendants acted with probable cause.  <u>Groman v. Twp. of
Manalapan</u>, 47 F.3d 628, 636 (3d. Cir. 1995) ("an arrest based on
probable cause could not become the source of a [§ 1983] claim
for false imprisonment").  To establish the absence of probable
cause, a plaintiff must show "that at the time when the defendant
put the proceedings in motion the circumstances were such as not
to warrant an ordinary prudent individual in believing that an
offense has been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262
(1975).  "Probable cause . . . requires more than mere suspicion;
however, it does not require that the officer have evidence to
prove guilt beyond a reasonable doubt."  <u>Orsatti v. New Jersey
State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather,
probable cause exists when the facts and circumstances are
"sufficient to warrant a prudent man in believing that the

---

[10]  Plaintiff's claim also alleges violations of the New
Jersey Constitution.  The analysis for unlawful arrest under §
1983 and the New Jersey Constitution are identical.  <u>See</u> <u>Orlowski
v. Borough of Sayerville</u>, 2007 WL 2005255, at *17 (N.J. Super.
Ct. App. Div. July 11, 2007) ("[The] standard for probable cause
is identical under both the Fourth Amendment of the Federal
Constitution and Article I, Paragraph 7 of the New Jersey
Constitution." (citing <u>State v. Novembrino</u>, 105 N.J. 95, 122
(1987))).

defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)).

Moreover, if an officer has probable cause to arrest Plaintiff for some crime, even if not for the specific crime for which he was charged, then Defendants would be entitled to summary judgment. "As long as the officers had some reasonable basis to believe [Mr. Rumbas] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances." Barna v. Cirt of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

Defendant Roberts' investigation report provides that Plaintiff was issued two separate citations on June 11, 2004, stating in pertinent part: "I issued Mr. Rumbas summons number 0421-L-000480 charging him with 39:4-56.6, Abandoning a Motor Vehicle on Private Property . . . I then went to the Barrington Station where I signed summons number 0403-SC-1618 charging Mr. Rumbas with N.J.S. 2C:29-1, Obstruction Administration of Law or Other Government Function." (Id. Ex. E.) Review of the transcript from the municipal court hearing could only indicate to a reasonable factfinder that Plaintiff stipulated to probable cause for the abandonment citation because only "ticket number 000480" is mentioned in the record. (Municipal Ct. Tr. at 2 ¶

15

12).  Because there is no evidence that Plaintiff stipulated to probable cause for his arrest under N.J. Stat. Ann. § 2C:29-1(a), the other charge at issue, the Court can not find that Plaintiff already stipulated to probable cause to arrest.  Moreover, Defendant has not opposed Plaintiffs' assertion that motor vehicle abandonment is not a violation for which an officer is authorized to make an arrest.  Indeed, Defendants agree that Plaintiff was not arrested for the abandonment citation.[11]  As a result, summary judgment is inappropriate for Defendants because the issue of whether Defendants had probable cause to arrest Plaintiff is still a genuine issue of material fact for the jury.

In addition, Defendants' reply brief argues that Plaintiff's refusal to provide identification upon request constituted probable cause, that Defendants are entitled to qualified immunity, and that Plaintiff should be judicially estopped from bringing a false arrest claim for the abandonment violation.[12]

---

[11]    Defendants argue in their reply brief that Plaintiff should be judicially estopped from asserting a claim for false arrest based on the citation for abandoning a motor vehicle. However, the Court need not reach this issue because it was not properly raised in Defendants' initial brief.  International Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992).  Even if it were, a jury could reasonably find that Plaintiff never asserted in an earlier proceeding that the police had probable cause to arrest him, as explained above.

[12]    In addition, Defendants argue in their reply that because Plaintiffs have failed to submit a statement of uncontested facts with their opposition as required by L. Civ. R. 56.1., their motion should either be granted or all facts contained in Defendants' statement of material facts should be deemed admitted

16

However, the Court declines to consider these arguments because
Defendant failed to raise them in their initial brief.[13]  "A
moving party may not raise new issues and present new factual
materials in a reply brief that it should have raised in its
initial brief.  See International Raw Materials, Ltd. v. Stauffer

---

if they are supported by the record.  Plaintiffs have not
complied with this requirement.  Failure to comply with this rule
is sufficient to deny a motion for summary judgment.  Comose v.
New Jersey Transit Rail Operations, Inc., No. 98-2345, 2000 WL
33258658, at *1 (D.N.J. Oct. 6, 2000).  Other courts facing a
non-moving party's failure to comply with Rule 56.1 have treated
their brief in opposition to the summary judgment motion as their
statement of uncontested facts with the qualification that all
facts not addressed by the non-moving party in their opposition
brief are deemed admitted.  SEC v. Chester Holdings Ltd., 41 F.
Supp. 2d 505, 516 n.7 (D.N.J. 1999).  However, absent evidence of
bad faith, a Court may choose to excuse the noncompliance of the
Local Rule.  Fowler v. Borough of Westville, 97 F. Supp. 2d 602,
606-07 (D.N.J. 2000).  Having no evidence of bad faith before the
Court, the Court shall not suppress Plaintiffs' opposition on
these grounds, however; Plaintiffs' counsel is now on notice that
failure to meet the requirements of Rule 56.1 in the future may
result in stricter sanctioning.  Parenthetically, the District
Court may promulgate an amendment to L. Civ. R. 56.1 whereby the
failure to submit a responsive statement of material facts will
result in movant's statement being deemed undisputed for purposes
of the motion.  See "Notice of Local Civil Rule amendment
proposed," in 17 NJLawyer 1375 (July 14, 2008).  Under the
proposed amendment, Plaintiff's failure to comply with this basic
requirement would in the future render the movant's facts
undisputed.

    [13]  Defendants assert in a footnote that because Plaintiffs'
counsel had indicated an intention to voluntarily dismiss Count V
of the complaint, and has not done so, that the Defendants should
be permitted to introduce new arguments in the reply brief.  This
is not a proper ground for permitting a moving party to raise
issues for the first time in reply.  Defendant has introduced no
evidence for this assertion, and the Court shall not consider
issues raised for the first time in reply, regardless of the
strategic reasons for doing so.

17

Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to
consider an issue raised for the first time in a reply brief);
see also Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186,
204-05 n.29 (3d Cir. 1990)." Ballas v. Tedesco, 41 F. Supp. 2d
531, 533 (D.N.J. 1999).  The reason for not considering new bases
for relief raised for the first time in a reply brief is self
evident: No sur-reply is permitted under L. Civ. R. 7.1, so the
opponent has no opportunity to address the new defense.  Bayer AG
v. Schein Pharmaceutical, Inc., 129 F. Supp. 2d 705, 716 (D.N.J.
2001).

        Therefore, because the existence of probable cause for
Plaintiff's arrest is still a genuine issue of material fact for
the jury, and Defendants' subsequent arguments are not properly
before the Court, summary judgment as to Count V of the complaint
for false arrest and false imprisonment is denied.

    C. **Bystander Liability**

        Plaintiff alleges in Count III of his Complaint that
Defendant Battista is liable for Defendant Roberts' alleged use
of excessive force, unlawful arrest, and assault and battery
because Defendant Battista had a constitutional duty, and a
realistic opportunity, to intervene in Defendant Roberts' alleged
violations of Plaintiff's constitutional rights but was instead
allegedly "deliberately indifferent."  (Pl.'s Compl. at ¶¶ 39-
41.)  "'To state a claim for excessive force as an unreasonable

                                18

seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable.'" <u>Kopec v. Tate</u>, 361 F.3d 772, 776 (3d Cir. 2004) (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 515 (3d Cir. 2003)).  A plaintiff can sustain an excessive force claim against an officer who did not participate directly in the use of force if the defendant officer failed to intervene to prevent the use of excessive force when there was a reasonable opportunity to do so.  See <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002).  "'If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'" <u>Id.</u> (quoting <u>Byrd v. Clark</u>, 783 F.2d 1002, 1007 (11th Cir. 1986)).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." <u>Id.</u> at 651.

     With respect to Defendant Battista's alleged failure to intervene in Defendant Roberts' use of excessive force, Defendant Battista argues that because the use of excessive force occurred "very, very, quick" and without warning, Defendant Battista had no reasonable opportunity to intervene.  (Def.'s Mot. at 9-11) (citing <u>Gaudreault v. Municipality of Salem, Massachusetts</u>, 923 F.2d 203, 207 n.9 (1st Cir. 1990) (finding that the defendant police officer was not liable under § 1983 because the attack by

other police officers was "'over in a matter of seconds'" and therefore the defendant had no "'realistic opportunity'" to intervene)).  Plaintiff has not opposed Defendants' motion for summary judgment as to Battista's liability for Defendant Roberts' use of excessive force, and consequently, it will be granted.

However, Plaintiff argues that his claim for bystander liability also seeks to hold Defendant Battista liable as a bystander pursuant to § 1983 for his failure to intervene in Defendant Roberts' unlawful arrest of Plaintiff, and that Defendants' motion does not address this claim.  Indeed, Count III of the Complaint provides "Defendant, Patrolman Battista, had a constitutional duty to intervene when plaintiff, William Rumbas, was being assaulted and battered, subjected to excessive force and unlawfully arrested by defendant, Patrolman Roberts." (Compl. ¶ 39.)  The motion for summary judgment does not challenge this aspect of Battista's liability and therefore it should not be dismissed.

The Third Circuit has not spoken as to whether a plaintiff may sustain a claim under § 1983 against an officer who did not participate directly in an unlawful arrest.  Several other circuits, however, have construed § 1983 to permit a claim for failure to intervene in a false arrest.  See <u>Gragnon v. Ball</u>, 696 F.2d 17, 21 (2d Cir. 1982) (holding an officer liable for failing

20

to intervene in a false arrest)); <u>Yang v. Hardin</u>, 37 F.3d 282, 285 (7th Cir. 1994) (holding that an officer is liable under § 1983 if the officer is present and has reason to know that a citizen has been "unjustifiably arrested" but fails to intervene); <u>Randall v. Prince George's County, Md.</u>, 302 F.3d 188, 203-04 n.23 (4th Cir. 2002) (holding that bystander liability under § 1983 extends beyond cases of excessive force, including false arrest and other constitutional violations).  The Court is persuaded by these holdings that police officers may be held liable under § 1983 when they knowingly fail to intervene when another officer in their presence unlawfully arrests a person, where the officer had a reasonable opportunity to intervene.  <u>See also</u> Third Circuit Model Jury Instructions: Civil § 4.6.2 (2007).

Defendants have not argued that Defendant Battista could not have intervened in Plaintiff's unlawful arrest.  Moreover, Defendant Battista has admitted that he would have a duty to intervene in an unlawful arrest were one to take place in his presence.  (Battista Dep. at 39.)  It remains for the jury to determine whether or not Plaintiff's arrest was lawful and whether Battista had a reasonable opportunity to intervene.  It follows that Defendant Battista's liability for failure to intervene to stop this allegedly unlawful arrest must be determined at trial, and Defendant Battista's motion for summary

judgment on Count III will be dismissed to this extent, while partial summary judgment will be granted for Battista with respect to Plaintiff's claim therein that Battista failed to intervene in the allegedly excessive use of force.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56 are granted in part and denied in part.  Thus, summary judgment is granted with regard to Plaintiffs' claims in Count IV and VI of the Complaint as to Defendant Borough of Lawnside and Police Director George Pugh, and in Count III as to Defendant Battista with regard to his failure to intervene in Defendant Roberts' use of excessive force because Plaintiffs do not oppose these motions.  However, summary judgment is denied as to Plaintiff's claims in Count V that Defendant Roberts violated his constitutional rights by subjecting him to unlawful arrest and imprisonment because a genuine issue of material fact exists as to whether there was probable cause for Plaintiff's arrest, and as to Plaintiff's claim in Count III that Defendant Battista failed to intervene in an unlawful arrest. The accompanying Order is entered.


<u>August 6, 2008</u>                <u>s/ Jerome B. Simandle</u>
DATE                                   JEROME B. SIMANDLE
                                   United States District Judge